```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND


MITRA RANGARAJAN              *
                              *
v.                            *
                              *   Civil Action No. WMN-12-1953
JOHNS HOPKINS HEALTH SYSTEM   *
CORP. et al.                  *
                              *
   *   *   *   *   *   *   *  *   *   *   *   *   *   *   *
```

**MEMORANDUM**

Pending before the Court is Defendants' Partial Motion to Dismiss Plaintiff's Complaint. ECF No. 27. The motion is fully briefed and ripe for review. Upon a review of the pleadings and the applicable law, the Court determines that no hearing is necessary, Local Rule 105.6, and that Defendants' Partial Motion to Dismiss will be granted.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Mitra Rangarajan, a former nurse practitioner at Johns Hopkins, originally brought this action as a putative relator under the False Claims Act alleging fraudulent Medicare billing and wrongful retaliation by Defendants Johns Hopkins Health System Corporation, Johns Hopkins University, John Hopkins Hospital, and Dr. Anthony Kalloo, Plaintiff's former supervisor, in his individual capacity. Plaintiff voluntarily dismissed her fraudulent billing claims and amended her complaint to include additional retaliatory claims concerning

Defendants' post-termination conduct.  The factual allegations in the First Amended Complaint, however, remained largely unchanged and are as follows.

In November 2007, Plaintiff was hired by Defendants as a nurse practitioner in the Division of Gastroenterology and Hepatology.  Incident to her employment, Plaintiff, and other similarly situated nurse practitioners, routinely handled office visits with patients.  Plaintiff alleges, however, that Defendants wrongfully billed for office visits handled by nurse practitioners as if they were handled by physicians.  Plaintiff discussed her billing concerns with Dr. Kalloo in December 2007, and raised the issue again in February and March of 2008 with Ms. Boldin, the Senior Administrative Manager for the division.  In response, Ms. Boldin allegedly told Plaintiff that if she continued to raise billing concerns she would jeopardize her job.

Plaintiff, however, persisted.  She raised the issue to Dr. Kalloo again in May and October of 2008, and to Ms. Boldin in April and July of 2009.  Plaintiff also sought help from other divisions.  She reported wrongful billing practices to the Human Resources Director in April 2009, a Billing Specialist in November 2009, and an employee of the Office of Institutional Equity in September 2010.  Overall, Plaintiff alleges that she reported fraudulent billing practices "on at least eighteen

separate occasions" to Defendants' employees. ECF No. 46 at 2. In retaliation for her diligent reporting, Plaintiff alleges that she was constructively terminated on May 6, 2011.

On June 22, 2011, Plaintiff was hired at Franklin Square Hospital ("FSH") contingent on her completion of the hospital's credentialing process. In the ensuing months, Plaintiff successfully passed FSH investigations, rebutted an accusation that Defendants subjected her to disciplinary action, and was set to obtain credentials. At this time, an FSH employee informed Plaintiff that Dr. Kalloo had still not responded to requests for an evaluation and that the credentialing committee would decide Plaintiff's case with or without Dr. Kalloo's feedback. Plaintiff alleges that on the last day before the credentialing committee meeting, Dr. Kalloo provided a false and defamatory evaluation causing FSH to deny her credentials and rescind its offer of employment. After the meeting, Plaintiff alleges that a FSH doctor told her that she would need to "clear her name" and obtain a good recommendation from Dr. Kalloo to procure employment at any hospital. First Am. Compl. ¶ 134, ECF No. 5.

On October 13, 2011, Plaintiff was hired at the Greater Baltimore Medical Center ("GBMC"), again contingent on receiving hospital credentials. Plaintiff alleges that GBMC subjected her application to intense scrutiny including an abnormally high

3

number of background checks, and that her credentialing was again frustrated by a negative reference from Defendants. Plaintiff alleges a GBMC Human Resources employee informed her that "[GBMC] do[es]n't want people like [Plaintiff] working [there]." Id. ¶ 141. Neither FSH nor GBMC would tell Plaintiff the nature of Dr. Kalloo's negative reference.

With the dismissal of Plaintiff's fraudulent billing claims, the following claims remain: a retaliation claim under § 2-607(a) of the Health-General Article of the Maryland Code (Count III); a retaliation claim under the Federal False Claims Act (Count IV); a defamation claim (Count V); a tortious interference with prospective business advantages claim (Count VI); and a false light claim (Count VII). Defendants now move to dismiss Counts III and VII as to all Defendants, and Count IV as against Defendant Kalloo. Not challenged in this motion are Count IV as it relates to non-supervisor Defendants, Count V, and Count VI.

## II. LEGAL STANDARDS

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id. at 555. Rather, the

4

complaint must be supported by factual allegations, "taken as true," that "raise a right to relief above the speculative level." Id. at 555-56. The Supreme Court has explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." Twombly, 550 U.S. at 556. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663. Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. Id. at 664; see also Brockington v. Boykins, 637 F.3d 503, 505-06 (4th Cir. 2011).

### III. DISCUSSION

#### A. Count III - Maryland Health Care Worker Whistleblower Protection Act

Defendants move to dismiss Count III, wrongful retaliation under the Maryland False Claims Act, arguing that this act expressly does not apply to licensed health care workers, which instead are protected under a separate section of the Maryland

5

Code.  See Md. Code Ann., Health-Gen. § 2-607(c) (West 2014) ("This section does not apply to an employee as defined in § 1-501 of the Health Occupations Article."); see also Md. Code Ann., Health Occ. § 1-501(c) (West 2014) (including in the definition of "employee" "any individual licensed or certified by a board under this article").  Plaintiff, in opposition, concedes the issue and seeks leave to amend to assert a claim under the Maryland Health Care Worker Whistleblower Protection Act, Md. Code Ann., Health Occ. §§ 1-501–506 (West 2014) (the Act).  Defendants, however, counter that amendment would be futile.

Defendants argue that Plaintiff's claim under the Act is time-barred because she was constructively terminated outside the one-year statute of limitations, and, furthermore, that Plaintiff has not alleged facts to establish "a substantial and specific danger to the public health or safety" as required by the Act.  Md. Code Ann., Health Occ. §§ 1-503 to 504 (West 2014).  In response, Plaintiff concedes that relief for her constructive termination is time-barred, but argues that she can state a cognizable claim based upon Defendants' other, post-termination, retaliatory acts.  Plaintiff further argues that her allegations of inadequate supervision comprise a substantial and specific danger to public safety per § 1-503 of the Act.

6

The Court finds that even if the claim is not time barred,[1] Plaintiff has not pled sufficient facts to implicate public safety.

Of the eighteen occasions detailed in her seventy page complaint, Plaintiff cites only three that arguably relate to public safety: (1) a nurse practitioner performing unsupervised colonoscopies, (2) fellows performing unsupervised procedures, and (3) an unlicensed foreign doctor practicing medicine. With regard to all three, Defendants argue that the "dangers" associated with these practices were never alleged and, furthermore, that Plaintiff's disclosures never relayed any concerns of safety. First, Defendants argue that, per the Complaint, nurse practitioners were authorized to perform colonoscopies and therefore were not a danger to public safety. Second, Defendants note that nothing in the Complaint suggests that the unsupervised fellows were dangerous or unqualified to

---

[1] Though unnecessary to its holding, the Court notes that persuasive authority indicates that post-termination retaliatory action may fall within the scope of "personnel action" protected by Md. Code Ann., Health Occ. § 1-502 (West 2014). See Kissinger-Campbell v. Harrell, No. 8:08-cv-568-T-27TBM, 2009 WL 103274, at *6–7 (M.D. Fla. Jan. 14, 2009) (interpreting substantially similar Florida whistleblower statute to cover post-termination retaliation); see also Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997) (holding that Title VII of the Civil Rights Act of 1964 allows suit for post-termination retaliatory discrimination). But see Beck v. Tribert, 711 A.2d 951, 955–57 (N.J. Super. Ct. App. Div. 1998) (interpreting analogous New Jersey statute to not extend to post-employment retaliation).

perform the alleged procedures.  Rather, the impetus of Plaintiff's disclosure of the <u>unsupervised</u> procedures was that the <u>supervisors</u> were allegedly billing.  Third, while Defendants do not contest the dangers associated with an unlicensed physician, they assert that Plaintiff's disclosure only related to fraudulent billing.  The Court notes that, per the Complaint, Plaintiff reported the unlicensed physician only after the physician had been terminated and the safety risk had abated. <u>See</u> First Am. Compl. ¶¶ 117, 216.

   The Court additionally notes that two of the Plaintiff's alleged disclosures were not made to a "supervisor" or "board" pursuant to Md. Code Ann., Health Occ. §§ 1-501 - 1-502 (West 2014).  The only alleged reporting of both the unsupervised colonoscopies and the unlicensed physician was to Allison Boyle of the Office of Institutional Equity.  <u>See</u> First Am. Compl. ¶ 117.  The Court notes that the report of unsupervised fellows was allegedly made to a supervisor, <u>see</u> <u>id.</u> ¶ 219, however, Plaintiff's concern was that the patient had specifically requested another physician, not that the procedure was unsafe.  The Court finds that the only danger Plaintiff alleged was the depletion of Medicare's coffers, which, without more, does not pose a substantial danger to public safety.

### B. Count IV – Supervisor Liability Under the False Claims Act, 31 U.S.C. § 3730(h) (2012)

Defendants move to dismiss Count IV against Dr. Kalloo arguing that supervisors are not liable for retaliatory actions under 31 U.S.C. § 3730(h) (2012). Defendants concede that recent amendments expanded the scope of the anti-retaliatory provision, but argue that the extent of the expansion is ambiguous and that Congress did not intend to extend liability to supervisors. In opposition, Plaintiff contends that, under the "Plain Meaning Rule," the current version of 31 U.S.C. § 3730(h) (2012) unambiguously permits a cause of action against "any person who retaliates against him/her 'in the terms and conditions of employment.'" ECF No. 46 at 13-14.

In 2009, Congress amended the "[r]elief from retaliatory actions" provision codified in 31 U.S.C. § 3730(h) to exclude language that limited relief to retaliatory actions "by [an] employer."[2] Fraud Enforcement and Recovery Act of 2009, Pub. L.

---

[2] The prior version provided that:
<u>Any employee</u> who is discharged, demoted, suspended, threatened, harassed, or in any manner <u>discriminated against in the terms and conditions of employment by his or her employer</u> because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, . . . shall be entitled to all relief necessary to make the employee whole.
False Claims Act of 1986, Pub. L. No. 99-562, § 4, 100 Stat. 3153, codified at 31 U.S.C. § 3730(h) (1988) (emphasis added).

No. 111-21, § 4(d), 123 Stat. 1617, 1624-25. The current version of the statute states that:

> <u>Any employee, contractor, or agent</u> shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner <u>discriminated against in the terms and conditions of employment</u> because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section.

31 U.S.C. § 3730(h) (2012) (emphasis added). The parties do not dispute that the congressional intent for the amendment was to "correct[] loophole[s]" and "assist individuals who are not technically employees . . . , but nonetheless have a contractual or agent relationship with an employer." False Claims Act Correction Act of 2008, S. Rep. No. 110-507, at 26-27 (2008); <u>see also</u> False Claims Act Correction Act of 2009, H.R. Rep. No. 111-97, at 14 (2009) (explaining that the statute was amended to protect "contract workers and others who are not technically 'employees'"). The parties also do not dispute that the pre-2009 version of the provision was generally accepted by courts to preclude supervisor liability. <u>See, e.g.</u>, <u>United States ex rel. Yesudian v. Howard Univ.</u>, 270 F.3d 969, 972 (D.C. Cir. 2001); <u>Zahodnick v. Int'l Bus. Machs. Corp.</u>, 135 F.3d 911, 914 (4th Cir. 1997). The deletion of "by his or her employer" is consistent with the stated Congressional intent to protect non-

employees; Congress is silent, however, on whether the deletion expands the class of potential tortfeasors.

District courts have split as to whether the 2009 Amendment creates supervisor liability. See Perez-Garcia v. Dominick, No. 13 C 1357, 2014 WL 903114, at *5 (N.D. Ill. Mar. 7, 2014) (ruling with the majority of districts that 31 U.S.C. § 3730(h) does not establish supervisor liability); Lipka v. Advantage Health Grp., Inc., No. 13-CV-2223, 2013 WL 5304013, at *11-12 (D. Kan. Sept. 20, 2013) (same); Russo v. Broncor, Inc., No. 13-cv-348-JPG-DGW, 2013 WL 7158040, at *6 (S.D. Ill. July 24, 2013) (same); Howell v. Town of Ball, Civil Action No. 12-951, 2012 WL 6680364, at *2 (W.D. La. Dec. 21, 2012) (same); Aryai v. Forfeiture Support Assocs., LLC, No. 10 Civ. 8952(LAP), 2012 WL 10911406 (S.D.N.Y. Aug. 27, 2012) (same); United States ex rel. Abou-Houssein v. Science Applications Int'l Corp., No. 2:09-1858-RMG, 2012 WL 6892716, at *3 (D.S.C. May 3, 2012) (same). But see Weihua Huang v. Rector and Visitors of Univ. of Va., 896 F. Supp. 2d 524, 548 n.16 (W.D. Va. 2012) (interpreting the deletion of employer to "le[ave] the universe of [potential] defendants undefined and wide-open"); U.S. ex rel. Moore v. Cmty. Health Servs., Inc., No. 3:09CV1127 JBA, 2012 WL 1069474, at *9 (D. Conn. Mar. 29, 2012) (same); Laborde v. Rivera-Dueno, 719 F. Supp. 2d 198, 205 (D.P.R. 2010) (same). To date, no circuit court has considered the issue.

11

This Court looks to the well-reasoned decision in Aryai as relied upon in Perez, Lipka, and Russo.  In Aryai, the court found ambiguity in the conflict between well-established precedent and the 2009 Amendment, and looked to legislative history to ascertain Congressional intent.  2012 WL 10911406, at *7 (quoting FTC v. Jantzen, Inc., 386 U.S. 228, 234-35 (1967)), ("When considering amendments to legislation, courts 'must read the Act as a whole . . . [and cannot] ignore the common sense, precedent, and legislative history of the setting that gave it birth.'").  The court reasoned that "Congress's expressed purpose in amending section 3730(h) was to expand the class of potential plaintiffs." Id. at 8. (referencing H.R. Rep. No. 111-97, at 14 (2009)).  "Congress was silent on the issue of the class of potential defendants," but importantly chose not to "substitute 'person' for 'employer'" to expressly create individual liability as it had in "several anti-retaliation statutes." Id. at *7-8.  The court concluded that:

> Where Congress expressly stated its intent to expand the definition of a whistleblower and added specific language to effectuate that intent, it strains common sense to read Congress's silence in the same sentence of the statute as effectuating an unexpressed intent to expand the class of defendants subject to liability under the statute.

Id. at *8.

The court further noted that Congress did not amend the mandatory remedy under which "[r]elief . . . shall include

reinstatement." 31 U.S.C. § 3730(h)(2) (2012) (emphasis added). This mandatory remedy, "[that] a mere supervisor could not possibly grant," was cited in rejecting individual liability under the pre-amendment version of section 3730(h) and the court found that logic remains sound in interpreting the amended version. Id. (quoting Yesudian, 270 F.3d at 972). Accordingly, the court found the deletion a "grammatical necessity of expanding the statute's protections" that does not provide a cause of action against individuals. Id.; accord Russo, 2013 WL 7158040, at *6 ("[T]he more likely reason for omitting 'employer' from the statute is to avoid confusion when an action is brought by a contractor or agent. . . . Retaliation against these two classes would not be by an 'employer.'").

This Court notes that the three decisions allowing individual liability under 31 U.S.C. § 3730(h) — Weihua Huang, Moore, and Laborde — all pre-date the current trend and lack any discussion of legislative history. Furthermore, in each case, the issue of supervisor liability was either not in dispute or appears to have been inadequately briefed. See Weihua Huang, 896 F. Supp. 2d at 548 n.16 (noting that defendants do not challenge the FCA claims); Moore, 2012 WL 1069474, at *9 (considering only out-dated pre-amendment authority); Laborde, 719 F. Supp. 2d at 205 (rejecting the defendant's out-dated pre-amendment authority).

13

This Court finds <u>Aryai</u> persuasive and adopts its reasoning. Contrary to Plaintiff's contention, the Court is not compelled by the Plain Meaning Rule to read the amended statute in a vacuum.  The Court finds ambiguity both in Congress's silence as to tortfeasors and the unavoidable contradiction between supervisor liability and a mandatory reinstatement remedy. Following the majority of courts that have ruled on the issue, this Court concludes that 31 U.S.C. § 3730(h) does not create a cause of action against supervisors in their individual capacity.

    **C. <u>Count VII - False Light</u>**

To state a claim for false light invasion of privacy, a plaintiff must assert:

> (1) that the defendant gave publicity to a matter concerning another that places the other before the public in a false light; (2) that the false light in which the other person was placed would be highly offensive to a reasonable person; and (3) that the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

<u>Campbell v. Lyon</u>, 26 F. App'x 183, 188 (4th Cir. 2001) (quoting <u>Bagwell v. Peninsula Reg'l Med. Ctr.</u>, 665 A.2d 297, 318 (Md. 1995) (internal quotation marks omitted).  To satisfy the first element, Defendants' disclosure of a private fact must be made to the "public at large," not only "to a single person or even to a small group of people."  <u>Henderson v. Claire's Stores,</u>

14

Inc., 607 F. Supp. 2d 725, 733 (D. Md. 2009) (citing Pemberton v. Bethlehem Steel Corp., 502 A.2d 1101, 1118 (Md. 1986)); see also Mazer v. Safeway, Inc., 398 F. Supp. 2d 412, 431 (D. Md. 2005) (quoting Restatement (Second) of Torts § 652D cmt. a (1977)) ("'Publicity' . . . means that the matter is made public, by communicating it to . . . so many persons that the matter must be regarded as substantially certain to become one of public knowledge.").

Defendants move to dismiss Count VII arguing that Plaintiff has not plausibly alleged the public disclosure element of a false light claim.  Plaintiff responds, arguing that Defendants made false and defamatory statements "throughout the Baltimore medical community."  ECF No. 46 at 14.  Plaintiff specifically alleges that Defendants made false and defamatory statements to: 1) "the Franklin Square Hospital ("FSH") credentialing office and committee" and 2) "the Greater Baltimore Medical Center ("GBMC") GI department, credentialing department, and human resources office."[3]  Id.

In Byington v. NBRS Financial Bank and Williams v. Wicomico County Board of Education this Court specifically held that

---

[3] Plaintiff further alleges that Defendants disseminated false statements to the medical personnel at Johns Hopkins, including Dr. Bayless.  Id. (citing First Am. Compl. ¶ 144).  As the Defendants note, however, the Complaint alleges that "'GBMC officials told Dr. Bayless'" that Dr. Clarke and/or Dr. Canto made disparaging comments about Plaintiff.  ECF No. 47 at 2 (quoting First Am. Compl. ¶ 144 (emphasis added by Defendants)).

disclosure to "a small group of potential employers" does not constitute the "public at large." In Byington, the plaintiff alleged that she was falsely accused of check kiting by her former employer and was forced to "publish" the incident on every subsequent employment application. Byington v. NBRS Fin. Bank, 903 F. Supp. 2d 342, 353 (D. Md. 2012). The court dismissed the false light claim finding that this communication to "a small group of potential employers" does not satisfy the publicity element. Id. In Williams, a high school teacher alleged that his former employer disclosed a "ruled out" incident of child abuse to three Maryland school systems preventing him from securing a job. Williams v. Wicomico Cnty. Bd. of Educ., 836 F. Supp. 2d 387, 390 (D. Md. 2011). The court dismissed the false light claim finding that the plaintiff failed to sufficiently allege the element of "public knowledge." Id. at 398.

Plaintiff argues that Williams is distinguishable because the plaintiff "did not include any allegations claiming his private information was made a matter of 'public knowledge.'" EFC No. 46 at 15 (quoting Williams, 836 F. Supp. 2d at 398). This Court, however, does not read Williams to foreclose false light claims simply because the complaint fails to make conclusory statements of the elements. Rather, this Court interprets Williams to hold that allegations of false

16

disclosures to three prospective employers did not equate to public knowledge for purposes of a false light claim.  In dicta, the court in Williams further reasoned that "even if Defendants conveyed the private information to numerous school systems and others," the plaintiff would need to assert additional facts indicating that the information had become public knowledge.

Similar to Byington and Williams, this Court finds that Defendants' alleged disclosures to two potential employers constitute disclosures to a "small group of people" and not to the "public at large."  While Plaintiff asserts in her Opposition that Defendants defamed her "throughout the Baltimore medical community," she does not assert this conclusory statement in the First Amended Complaint, nor does she allege sufficient factual support for that conclusion.  Accordingly, the false light claim will be dismissed.

## IV. CONCLUSION

For the above-stated reasons, the Court will grant Defendants' Partial Motion to Dismiss.  A separate order will issue.

_____/s/_____
William M. Nickerson
Senior United States District Judge

DATED: November 21, 2014.