IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> STATE OF MARYLAND, *ex rel.* <br> MITRA RANGARAJAN, <br><br> *Plaintiffs,* <br><br> v. <br><br> JOHNS HOPKINS HEALTH <br> SYSTEM CORP., *et al.*, <br><br> *Defendants.* | Case No.: 1:12-cv-01953-WMN |

**PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR LEAVE TO FILE PLAINTIFFS' SECOND AMENDED COMPLAINT**

Comes now, Plaintiffs/Relator Mitra Rangarajan, by and through counsel, and files this Reply to Defendants Opposition to Motion for Leave to File Plaintiff's Second Amended Complaint, and in support thereof states as follows.

Plaintiffs' filed a Complaint under seal on June 29, 2012. Plaintiffs filed the First Amended Complaint on October 4, 2012. The claims were investigated over a period of eighteen months before the government issued notice that it was declining to intervene in this matter. Plaintiff has reason to believe that during the course of the government's investigation, Defendant Johns Hopkins voluntarily submitted payments to the government for fraudulent billing, which was alleged in the Complaint and the First Amended Complaint. On February 17, 2015, Plaintiffs filed a Motion for Leave to file a Second Amended Complaint, and attached the 251 paragraph Second Amended Complaint which details widespread fraudulent billing for physician services and diagnostic tests and procedures at Johns Hopkins ("JH"). Defendants oppose the motion and raise two arguments: 1) that equities weigh in favor of denying leave to

1

amend the complaint and 2) that amendment would be futile.  Because this is Plaintiffs' first motion for leave to file an amended complaint and the Second Amended Complaint simply seeks to reinstate claims in the First Amended Complaint, and because Defendants would not suffer undue prejudice, and finally because the claims are not futile, the motion for leave to file a Second Amended Complaint should be granted.

**I. The Court Should Grant Plaintiffs Leave to File the Second Amended Complaint Because Rule 15(a) of the Federal Rules of Civil Procedure Requires Leave to Amend to be Freely Given Where Justice So Requires, Because Justice Requires that the Motion be Granted, and Because Granting the Motion will not Unduly Prejudice the Defendants.**

Under Rule 15(a) of the Federal Rules of Civil Procedure, once a defendant has answered a complaint, the plaintiff may amend the complaint "only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a) provides that leave to file an amended pleading when required by the court "shall be freely given when justice so requires," and leave to amend should be granted liberally. *See Forman v. Davis*, 371 U.S. 178, 181 (1962).  The rule is to be applied liberally, *see Nebraska v.* Wyoming, 515 U.S. 1, 8 (1995) (noting the solicitude for liberal amendment of pleadings animating the Federal Rules of Civil Procedure, Rule 15(a)), and although leave to amend is not automatic, the rule reflects a very strong preference for resolving disputes on their merits rather than on the technicalities of pleadings. *Forman v. Davis*, 371 U.S. at 181-82.  In fact, the preference in favor of resolving disputes on their merits that undergirds Rule 15(a) is so strong that it has been held that the rule creates a presumption in favor of granting leave to amend unless there are sound reasons for denying it.  *AmerisourceBergen Corp. v. Dialysist West, Inc.,* 445 F.3d 1132, 1140 (9th Cir. 2006) ("Absent prejudice, or a strong showing of the other factors, such as undue delay, bad faith, or dilatory motive, there exists a presumption under Rule 15(a) in favor of granting leave to amend.").

Such leave is inappropriate where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Forman*, 371 U.S. at 182.

A. **The Factors to be Considered Under Rule 15(a) and the Interests of Justice Militate in Favor of This Court Granting the Plaintiffs' Motion for Leave to File the Second Amended Complaint.**

The factors that this Court should consider when it decides whether or not to grant the Plaintiffs' motion include: (1) the number of requests to amend; (2) the length of time that the case has been pending; (3) the presence of bad faith or dilatory reasons for the request; (4) the merit of the proffered amended pleading; and (5) any prejudice to the non-moving party. *See United States ex rel Nathan v. Takeda Pharmaceuticals North America, Inc.*, 707 F.3d 451 (4th Cir. 2013) (affirming district court's denial of motion to amend complaint for fourth time where complaint had been pending two years, Relator was on notice of deficiencies, and Defendant would be unduly subjected to continued time and expense occasioned by Relator's pleading failures).

   1. **This is the Plaintiffs' First Motion to Amend the Complaint**

The fact that this is Plaintiffs' first motion to amend the complaint militates strongly in favor of the Court granting the motion. Plaintiffs' filed a Complaint under seal on June 29, 2012. Plaintiffs filed the First Amended Complaint on October 4, 2012. The government filed its Notice of election to decline intervention on January 13, 2014. On January 28, 2014, Plaintiffs' counsel filed a motion for voluntary dismissal of Counts 1 and II without prejudice. Shortly thereafter, on April 4, 2014, Plaintiffs' counsel was substituted with new counsel.

3

Although the case has been pending since 2012, this is not unusual for a False Claims Act claim. Certainly, standing alone, the age of this case is no reason for the Court to deny the motion to amend. The fact that the case is 2.5 years old or Plaintiffs' new counsel sought to reinstate the FCA claims shortly after entering his appearance does not mean that it would be inequitable, unjust or prejudicial to the Defendants if this Court grants the Plaintiffs motion for leave to file the Second Amended Complaint.

Further, the motion for leave to file the Second Amended Complaint was filed within the period permitted by the court to amend the complaint in the Scheduling Order.

Looking at the stage of the case, rather than simply its age, it is apparent that it would be inappropriate for the Court to deny the Plaintiff's motion to amend the complaint. Given that discovery has not commenced and trial is nowhere close to being imminent, it would not be inequitable, unjust or prejudicial to the Defendants if this Court grants the Plaintiffs' motion for leave to file the Second Amended Complaint.

**2.  There is Not a Hint of Evidence that the Plaintiffs Are Motivated by Either Bad Faith or a Dilatory Motive in Bringing the Motion to Amend**

Defendants begin their opposition with a false accusation about Ms. Rangarajan to attempt to taint her before the court. Defendants claim that Ms. Rangarajan was placed on "an employee-improvement plan and ultimately disciplined for performance- and safety-related concerns" without any citation to the record. Opp. at 1. Ms. Rangarajan worked at JHU from 2007 to 2011, and she was highly regarded until she began to raise issues about fraudulent billing practices. In fact, she was never placed on a performance improvement plan and there were no patient safety concerns with Ms. Rangarajan and there was no disciplinary action taken against her for poor performance or patient safety. Ms. Rangarajan did not resign from her position; she

4

was constructively discharged due to intolerable working conditions, including reassignment from all of her duties, after she complained about fraudulent billing practices.

Defendants then proceed with what may be the weakest arguments ever for prejudice to a defendant if a party is permitted the opportunity to amend their complaint. In sum, Defendants argue that if the Court permits Plaintiff to amend her complaint to reinstate her original claims, that it will be forced to defend claims that it did not believe it would have to defend. Defendants complain that they would suffer prejudice because the proposed claims would radically expand the scope of discovery, further delay the resolution of the case, and require the Defendants to defend against thousands of unspecified transactions, many of which occurred up to seven years ago. Discovery in this case has not commenced. In False Claims Act cases, review of claims and transactions are relevant to evaluate the claim, and the statute of limitations for False Claims Act cases is six years. The prejudice Defendants complain about is no different than what all civil defendants face.

Next, Defendants argue that granting leave to amend would substantially prejudice the interests of third parties. First, interest of third parties will be minimal in the litigation of the claims in the Second Amended Complaint, but the primary focus should be on the parties before the court. Further, Defendants maintain that Ms. Rangarajan would suffer no prejudice if leave to amend is denied because she elected to dismiss the claims and has offered no justification for her decision to reinstate them. To the contrary, the claims were brought on behalf of the United Stated and the State of Maryland and all citizens are harmed when fraud is committed on the government. In addition, Ms. Rangarajan has provided a justification for reinstatement of the claims. After the government declined to intervene, the claims were dismissed without prejudice

and Ms. Rangarajan's prior counsel withdrew from the case. Ms. Rangarajan's belief about the fraud she witnessed has not changed.

Defendants argue that courts presume bad faith or a dilatory motive where the plaintiff was aware of the underlying claims and provides no justification for seeking leave to add them. Defendants claim that courts have recognized that motions to amend pleadings to restore allegations that the movant previously abandoned create a difficult burden for the moving party since it is obvious that the movant did not suddenly discover a new cause of action. Opp. at 5 citing *Conroy Datsun Ltd. V. Nissan Motor Corp.*, 506 F. Supp. 1051, 1054 (N.D. Ill. 1980). *Conroy Datsun* is distinguishable because the court denied Plaintiff's motion for leave to file amendments to the complaint, when the claims were in the original complaint and then withdrawn, and then a motion to amend to reinstate the claim was filed ten days before completion of discovery. There, the plaintiffs' alleged that they received information integral to the claim during a deposition. The court concluded that the information in the amended complaint was readily available to the plaintiffs because it came from one of plaintiffs' witnesses and well before the motion to amend was filed. *Id.* The *Conroy Datsun* holding has no bearing on the facts present here and provides absolutely no basis for denying the motion for leave to file an amended complaint.

Defendants next contend they would suffer prejudice if leave to amend were granted because the amended complaint would convert the case from a retaliation claim to a False Claims Act complaint, which could require examination of thousands of transactions, hundreds of patient visits, and dozens of witnesses. Opp. at 6. Defendants argue that the amendments would fundamentally change the nature of the proceedings and should be disfavored. Once again, this is just garden variety prejudice that every defendant faces in litigation. It is of no

consequence that the amendment of the complaint will fundamentally change the proceeding. The only relevant consideration is whether Plaintiffs are permitted under the rules and controlling authority to amend the complaint with properly supported claims.

Defendants argue that Ms. Rangarajan's delay is relevant in measuring the prejudice to the Defendants and acknowledge that discovery has not begun in this case, but assert that the passage of time threatens to complicate the proceedings. Defendants claim that the passage of time renders it more difficult for Defendants to defend against the allegations.

The passage of time has no impact whatsoever on the defense. First, the False Claims Act provides a six-year statute of limitations. If Defendants are prejudiced because the statute permits claims to extend for six years, then every defendant in a False Claims Act complaint is prejudiced any time a False Claims Act claim is filed. Many of the claims can be verified by comparing the treatment notes with the billing records. Defendants' records should be in an electronic format and the passage of time has no bearing on these records.

Defendants argue that the prejudice is compounded because Ms. Rangarajan has a separate lawsuit against JHU pending in the court, and there is a possibility that the parties could engage in coordinated discovery and motions practice in both cases, but that prospect is unlikely if Ms. Rangarajan is permitted to amend her complaint. Defendants argue that they would be forced to undertake duplicative discovery and defend against inconsistent factual theories involving an otherwise common nucleus of operative facts. These claims are equally without merit. Ms. Rangarajan's False Claims Act claims are totally different from her Title VII discrimination claims and her separate lawsuit has no bearing on the False Claims Act complaint.

Despite Defendants' arguments to the contrary, there is not a hint of bad faith or dilatory motive in the substance of the timing of the Plaintiffs' motion to amend the complaint. In fact,

the bringing and the disposition of the motion will not cause any delay since the Motion for Leave to File the Second Amended Complaint and the Second Amended Complaint were filed within the time permitted by the Court in its Scheduling Order to file an Amended Complaint. The Plaintiffs are indisputably motivated by a desire to achieve the most complete justice possible for the people of the United States and the State of Maryland, and not by any bad faith or any desire to delay the proceedings. The fact that there is absolutely no evidence that even remotely suggests that the Plaintiffs motion for leave to amend is being brought in bad faith or for any purpose of delay militates in favor of this Court granting the motion.

    **3.**     **Granting the Plaintiffs' Motion to Amend the Complaint Would not Unduly Prejudice the Defendants**

Because prejudice to the non-moving party is the touchstone in determining whether to deny leave to amend a complaint, the Court must consider whether granting the Plaintiffs' motion for leave to amend their complaint would unduly prejudice the Defendants. Defendants have argued that they will suffer severe prejudice if the Court grants the Plaintiffs' motion to amend the complaint, and have marshalled a lengthy parade of horribles in an attempt to convince the Court that unprecedented evils will befall the Defendants and third parties if they are forced to defend against a False Claims Act complaint.

The Defendants bear the burden of demonstrating that they will suffer undue prejudice if the Plaintiffs' motion is granted. Prejudice to the Defendants cannot be presumed or deduced or extrapolated from its legal arguments; it must be shown. Merely claiming prejudice will not lead to denial of a motion for leave to amend. The burden is on the Defendants to demonstrate that they would (and not just in theory), suffer undue prejudice if the motion to amend is granted. *See Beeck v. Aquaslide `N' Dive Corp.*, 562 F.3d 537, 538 (8th Cir. 1977).


The Defendants have not made this showing here. The Plaintiffs seek to restore claims voluntarily dismissed by prior counsel. They are not raising new substantive claims. They are not adding new Defendants, and they are not setting forth a new or different theory of recovery. The claims are the same as they have always been, and the Defendants remain the same, and the theory of recovery remains unchanged.

### 4. The Plaintiffs Have not Unduly Delayed Bringing this Motion

Delay may be undue if a movant has had previous opportunities to amend and has not taken advantage of those opportunities. The Plaintiffs' have not unduly delayed bringing their motion to amend the complaint. The Plaintiffs are bringing this motion at a reasonable and logical stage of this litigation. The Court has recently entered a Scheduling Order and provided the parties a date by which to amend the pleadings, and the motion was filed within the deadline set by the court. Even if it could reasonably be said that the Plaintiffs could have or should have moved to amend the complaint at some earlier point in this litigation, only undue delay and not mere delay justifies denying a motion to amend. Undue delay exists where the Defendant can demonstrate that it was prejudiced by the delay.

To show prejudice, the non-movant must show unfairness in procedure or timing in preventing the non-movant from properly responding. *In re Vitamins Antitrust Litigation*, 217 F.R.D. 34, 36 (D.D.C. 2003). The Plaintiffs have not delayed bringing this motion, and if they did, that delay has not caused any prejudice to the Defendants. It would certainly not, at this juncture of the litigation, be unfair to the Defendants for the Court to grant the Plaintiffs' leave to amend the complaint, and the Court should grant the Plaintiffs' motion.

The Defendants have utterly failed to demonstrate that they would suffer significant prejudice if the Plaintiffs' motion is granted. While Defendants claim that they would be

prejudiced if the court grants the motion, they have not set forth even a single fact in support of this claim. The Defendants want the Court to presume that because third parties may be impacted, the Defendant will suffer prejudice. But prejudice is not for the Court to presume, it is for the Defendants to demonstrate. *See e.g., Hanson v. Hunt Oil Co.,* 398 F.2d 578, 582 8th Cir. 1968). Defendants cannot and have not done so.

### 5. **Plaintiffs' Claims are Not Futile**

Defendants maintain that the proposed Second Amended Complaint is futile because it fails to include critical facts necessary to establish all of the elements of the claims. Opp. At 11-12. Defendants next argue that Ms. Rangarajan is not permitted to bring a claim under the Maryland False Claims Act in the absence of State intervention. Defendants note that Ms. Rangarajan must satisfy the "particularity" requirements of Rule 9(b) of the Federal Rules of Civil Procedure, and must at a minimum describe the time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained. Opp. at 13.

Plaintiffs' Second Amended Complaint describes in detail the time, place, and contents of the false representations, as well as the identities of the persons making the representations and how they benefitted from the representations. These amendments are not futile.

The Court can quickly dispense with the argument that the Second Amended Complaint is futile because the type of fraud alleged by Ms. Rangarajan has been cited with approval in the U.S. Court of Appeals for the Fourth Circuit. Ms. Rangarajan alleged in the detailed 251 paragraph Second Amended Complaint, *inter alia,* that over her four years of employment with Defendants physicians in the department where she worked engaged in a scheme where they billed for visits with patients even though the patients were seen by NPPs. Para. 67-106. It can

hardly be argued that that claims are futile. She detailed how new and existing patients made appointments, received treatment and were diagnosed by NPPs when they were seen; how unqualified personnel performed tests; how the physicians billed for services they never provided and how the billing was submitted to JH's billing office for billing to the government and reimbursement. *Id.* Ms. Rangarajan provided some dates that specific services were recorded by the physicians but were never provided. In *U.S. ex rel. Nathan v. Takeda Pharmaceuticals North America, Inc.*, 707 F.3d 451, 457 (4th Cir. 2013), the Fourth Circuit cited with approval *United States ex rel. Grubbs v. Kanneganti,* 565 F.3d 180, 192 (5th Cir. 2009), for the proposition that specific allegations of the defendant's fraudulent conduct, virtually identical to the fraudulent scheme alleged here, necessarily led to the plausible inference that false claims were presented to the government. In *Grubbs*, the court concluded that because the complaint included the dates of specific services that were recorded by the physicians but never were provided, such allegations constituted "more than probable, nigh likely, circumstantial evidence that the doctors' fraudulent records caused the hospital's billing system in due course to present fraudulent claims to the Government." 565 F.3d at 192.

Defendants do not address the genesis of the fraud, but argue that Ms. Rangarajan seeks to advance two theories of fraud—1) that the Defendants improperly billed the government for services performed by non-physician providers as if those services were performed by a physician; and 2) that the Defendants improperly billed the government for certain diagnostic tests performed by non-physician providers. Opp. at 14.

Defendants do not attempt to address all of the allegations or claims in the Second Amended Complaint, but rather cherry pick a few of the patient visits detailed in the Second Amended Complaint and argue that some fact is missing from that particular patient visit. For

example, Defendants argue that Ms. Rangarajan complains about a patient visit in July or August 2010 where she saw the patient but a physician falsely recorded that the physician saw the patient, but argue that Ms. Rangarajan does allege if this was an existing or new patient. Defendants attempt to obscure the larger picture that fraudulent claims were submitted by doctors on a daily basis for payment to the government as detailed in para. 67-106.

Ms. Rangarajan alleged that with respect to the improper billing for diagnostic tests and procedures performed by non-physician providers, JH motivated its physicians through bonuses to fraudulently bill for tests and procedures. Para. 165. In particular, esophaegeal manometry, anorectal manometry pH impedance testing were performed by unqualified nurses and nursing assistants and nurse technicians, and JH improperly billed Medicare, Medicaid and other federal health care programs as if physicians had performed these diagnostic tests. Para. 165-173. In addition, she alleged that JH improperly billed Medicare, Medicaid and other federal health care programs for breath analysis tests, when a nurse routinely performed the test and interpreted the results and would call the Green Spring Clinic and advise which drug or drugs to prescribe for the patient. Para. 179-181. In addition, Ms. Rangarajan alleged that JH improperly billed Medicare, Medicaid and other federal health care programs for colonoscopies, para 182-199; improperly billed for the unsupervised procedures performed by fellows, para. 200-222.

Defendants claim that Ms. Rangarajan does not plead facts establishing that any of the services in question were provided to patients who were beneficiaries of a government health care program. Opp. At 15. This is not true. Ms. Rangarajan repeats over and over in her Second Amended Complaint that fraudulent claims for patients that she and other NPPs saw and treated were submitted by doctors and then to JH billing for reimbursement from the government. Para. 1, 2, 4, 5, 6, 8, 18. Ms. Rangarajan alleged that on January 5, 2011, she alleged that she saw a

79 year old woman who was experiencing complications secondary to gastric cancer, and Dr. Mullins billed for all of the patients seen as if he had performed their office visits. Para 89-90. Again, she alleges that on September 28, 2009, she handled a patient visit for a 67 year old woman complaining of "epigastric fullness, increased belching and constipation" but Dr. Mimi Canto falsely attested that she saw and evaluated the patient for a new patient office visit, para. 100.

Defendants also contend that Ms. Rangarajan does not allege that Defendants submitted a claim to the government in connection with any of the specific visits identified in the proposed Second Amended Complaint, and that Ms. Rangarajan fails to link the office visits to the submission of false or fraudulent claims. Opp. at 15. As noted earlier, this argument ignores the claim that doctors billed for patients seen by NPPs that the doctors had not seen.

Defendants cite to the *Nathan* decision in the Fourth Circuit and assert that Ms. Rangarajan must allege "specific, identifiable claims actually were presented to the government for payment." *U.S. ex rel. Nathan v. Takeda Pharmaceuticals North America, Inc., 707 F.3d 451,* 458 (4th Cir. 2013). Defendants also cite a decision in this court, *United States ex rel. Palmieri v. Alpharma, Inc.*, No. 10-cv-1601, 2014 WL 1168953, at *12 (D. Md. March 21, 2014).

*Nathan* and *Palmieri* are factually distinguishable from this case, and *Palmieri* actually supports granting leave to amend the complaint. First, in *Nathan*, the Relator never alleged that false claims were submitted to the government; he only alleged a fraudulent scheme that he claimed supported an inference that false claims were submitted to the government. *Nathan,* 707 F.3d 451, 456 (4th Cir. 2013). Similar facts were present in *Palmieri*, and the district court concluded that the issue before the court had been resolved in *Nathan. (*"Fatal to the claim, Relator does not allege in the amended complaint that the targeted [physicians] wrote off any

off-labeled prescriptions that were submitted to the government for payment, a critical omission in a case brought under the [False Claims] Act." 928 F. Supp. 2.d 840, 856 (D. Md. 2013).  In *Palmieri*, the district court permitted the Plaintiffs to file an amended complaint.  Thus, these cases are distinguishable from the present case because Ms. Rangarajan specifically alleges that false claims were submitted to the government, and she provided how and when claims were submitted.

In *Nathan,* however, the Court further emphasized that " . . . the standard we articulate today does not foreclose claims under the Act when a relator plausibly pleads that specific, identifiable claims were actually presented to the government for payment.  Of course, whether such factual allegations in a given case meet the required standard must be elevated on a case-specific basis." *Id.* at 458.  Hence, the *Nathan* court did not foreclose claims where a relator plausibly pleads that claims were actually presented to the government, and noted that those claims should be considered on a case by case basis.

In contrast to the facts in *Nathan* and *Palmieri*, Ms. Rangarajan identified multiple incidents where patients were seen by NPPs but JH billed the government as though they were seen by physicians.  She alleges that for each allegation of fraud that JH improperly billed Medicare, Medicaid and other federal health care programs.  But even if she did not identify each incident that a fraudulent claim was submitted to the government, she has plausibly pled that claims were actually presented to the government.

Defendants contend that Ms. Rangarajan is left alleging that "[u]pon information and belief, Johns Hopkins billing department submitted false and fraudulent claims during the relevant period to Medicare and other federal health care programs," Opp. at 16, citing Second Amended Complaint at para. 161, and general claims that physicians employed by the

14

Defendants generally billed for diagnostic tests and services. Opp. at 16.  Defendant ignores all the specific instances in the Second Amended Complaint where Ms. Rangarajan alleges that fraudulent claims were submitted to Medicare, Medicaid and other federal health care programs.

Defendants next argue that even if it is permissible to presume that some claims must have been presented to the government for payment, Ms. Rangarajan failed to allege facts necessary to show that the underlying tests and services were performed in a manner that would have been inconsistent with Medicare billing guidelines.  Defendants cite to an allegation by Ms. Rangarajan that she handled an office visit for a patient but did not allege that this was a new patient or the patient presented for treatment with new conditions.  Opp. at 17.  Defendants assert that Ms. Rangarajan fails to specify facts that show that NPPs were not properly supervised or were unqualified to perform the diagnostic tests at issue. Ms. Rangarajan alleged that NPPs performed tests that they were not qualified to perform and the government was billed for these services, and she described in detail how this compromised patient safety.   Para. 67-106; 164-222.

Defendants' argument that Ms. Rangarajan is legally precluded from advancing her proposed claim under the Maryland False Claim Act because the State of Maryland through the United States declined to intervene, fails. The United States submitted a notice of declination, but reserved the right to intervene.  Thus, the State of Maryland has not declined to intervene. As the federal claims co-exist with the state claims, both federal and state claims should remain if the state claims remain.

Finally, Defendants make the remarkable argument that Ms. Rangarajan has cast reputational harm on health care organizations and professionals and has failed to allege how they violated the False Claims Act.  Ms. Rangarajan's Second Amended Complaint provided the

exact details down to the date of the fraudulent conduct, and how Defendants and other doctors violated the False Claims Act. The Second Amended Complaint details how these organizations and individuals jeopardized patient safety and submitted fraudulent claims for payment to the government. Defendants' contention that Ms. Rangarajan's Second Amended Complaint fails to provide basic details about the underlying fraud is absurd.

### 6. The Interests of Justice Demand that this Court Grant the Plaintiffs' Motion to Amend the Complaint

Courts, and the legal system, exist to do justice. That perfect justice is unattainable should not excuse the pursuit of it. If Defendants' fraudulent billing practices exist, as Plaintiffs' allege, there is no reason to deny the motion for leave to file the Second Amended Complaint. Justice will be best served if this Court grants the Plaintiff's Motion for Leave to File the Second Amended Complaint.

For these reasons, Plaintiff requests that the court grant the motion for leave to file Plaintiff's Second Amended Complaint.

Respectfully submitted,

_____/s/_____
David A. Branch #22862
Law Office of David A. Branch and Associates, PLLC
1828 L Street, NW
Suite 820
Washington, D.C. 20036
(202) 785.2805 phone
(202) 785.0289 fax
davidbranch@dbranchlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of March, 2015, I caused a copy of the foregoing to be served by electronic mail on the following:

Robert T. Smith
Katten Muchin Rosenman LLP
2900 K Street NW, North Tower – Suite 200
Washington, DC 20007-5118
(202) 625-3616 (phone)
(202) 339-6059 (facsimile)
Robert.smith1@kattenlaw.com

Gil M. Soffer
Gil.soffer@kattenlaw.com

Jennifer Baker Loeb
Jennifer.loeb@kattenlaw.com

*Counsel for Defendant*


Thomas F Corcoran
Assistant United States Attorney
Office of the United States Attorney
36 S. Charles Street, Fourth Floor
Baltimore, MD 21201

*Counsel for the United States of America*

_____/s/_____
David A. Branch