IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MITRA RANGARAJAN              *
                             *
                             *
v.                           *
                             *    Civil Action No. WMN-12-1953
JOHNS HOPKINS HEALTH SYSTEM   *
CORP. <u>et al</u>.                 *
                             *

   *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

<u>**MEMORANDUM AND ORDER**</u>

Pending before the Court is Plaintiff Mitra Rangarajan's

Motion for Leave to File Second Amended Complaint.  ECF No. 60.

The motion is fully briefed and ripe for review.  Upon a review

of the papers filed and the applicable law, the Court determines

that no hearing is necessary, Local Rule 105.6, and that the

motion will be denied.

Plaintiff was employed as a nurse practitioner at the Johns

Hopkins Hospital and at various clinics that are part of the

Johns Hopkins health care system.[1]  She filed this action on June

29, 2012, alleging that the Johns Hopkins Defendants and her

---

[1] Plaintiff names as Defendants a number of entities associated
with the Johns Hopkins Hospital including Johns Hopkins
Medicine, Johns Hopkins Health Systems Corp., and Johns Hopkins
University without specifying which specific entity was her
actual employer.  Plaintiff simply states she "work[ed] at Johns
Hopkins."  First Am. Compl. ¶ 2.  In a related case, discussed
below, she identifies "Johns Hopkins University" as her former
employer.  <u>Rangarajan v. The Johns Hopkins University</u>, Civil No.
WMN-13-3630, Compl. ¶ 4.  For ease of reference in this opinion,
the Court will simply refer to the Defendants collectively as
"Johns Hopkins."

former supervisor, Dr. Anthony Kalloo, engaged in fraudulent billing practices that began "at least as early as November 2007 when [she] started working at Johns Hopkins and continuing until at least May 2011 when she was constructively discharged." Compl. ¶ 2.  She brought claims as a putative relator under the federal False Claims Act, 31 U.S.C. §§ 3729(a)(1)(A)-(B), as well as under the Maryland False Health Claims Act, Md. Code Ann., Health-General §§ 2-602(a)(1)-(2).  Id. (Counts I and II). She also included retaliation claims under both statutes, Counts III and IV, alleging that Defendants demoted, suspended, harassed, and ultimately constructively discharged her in retaliation for her reporting, exposing, and refusing to go along with the alleged fraudulent billing practices.  She further alleged as part of those claims that Defendants continued their retaliation after her discharge by providing false and inaccurate references that prevented her from obtaining employment at other area hospitals.

On October 4, 2012, Plaintiff filed a First Amended Complaint which added a few additional allegations regarding the negative references given by Johns Hopkins personnel to Plaintiff's potential employers, Franklin Square Hospital (FSH) and Greater Baltimore Medical Center (GBMC).  She also added three state law tort claims related to those negative references: Defamation (Count V), Tortious Interference with

Prospective Business Advantages (Count VI), and False Light (Count VII).  After several extensions of time, the United States filed on January 13, 2014, a notice of its decision not to intervene in the false claims aspects of the First Amended Complaint.  The First Amended Complaint was then unsealed. Shortly thereafter, on January 28, 2014, Plaintiff filed a motion to voluntarily dismiss the false claims counts, Counts I and II, in the First Amended Complaint.  The Government filed a response indicating its consent to the dismissal of those claims, without prejudice, and the Court granted the motion on January 30, 2014.

In response to a request from the Court, Plaintiff submitted a status report on March 21, 2014.  In that report, Plaintiff's counsel in this matter, Jay Holland, indicated that Plaintiff had recently filed a related Title VII matter in this Court, Civil No. WMN-13-3630,[2] in which Plaintiff was represented by a different attorney, David Branch.  ECF No. 17.  That Title VII suit had been filed on December 2, 2013, and was served on Defendant[3] on February 28, 2014.  Holland represented that he would provide an updated status report "after full and thorough

---

[2] This second suit was initially assigned to Judge Marvin Garbis but it was recently reassigned to the undersigned as a related action.

[3] The second suit is brought only against The Johns Hopkins University.

consultation with Mr. Branch and the Plaintiff, as to the most efficacious way to proceed with both cases pending before the court." Id. On April 4, 2014, Mr. Holland submitted that updated report stating that Mr. Branch would be representing Plaintiff in both actions and Mr. Branch entered his appearance in this action on that same date.

On May 14, 2014, Mr. Branch filed a motion to extend the time to serve Defendants with the First Amended Complaint in this action, indicating that, while he had "undertaken an effort to evaluate Plaintiff's claims," the process had yet to be completed because of counsel's other trial commitments. The Court granted that motion and this suit was eventually served on Defendants on June 27, 2014, almost two years after it was filed. On July 17, 2014, Defendants filed a motion to dismiss portions of the First Amended Complaint. ECF No. 27. Plaintiff opposed that motion after having been granted two extensions of time in which to do so. The Court granted Defendants' motion on November 21, 2014, dismissing the retaliation claim under the Maryland statute, and the False Light claim, and the retaliation claim under the federal statute to the extent it was asserted against Dr. Kalloo in his individual capacity. Thus, this action in now limited to a retaliation claim under the federal False Claim Act, a defamation claim, and an interference with prospective business advantages claim.

4

The Court notes that Plaintiff's second lawsuit relates to the identical time period as this action and, as this action is currently framed, involves much of the same alleged conduct.  In the second action, Plaintiff complains about the hostile treatment she experienced working under Dr. Kalloo, albeit in much greater detail than in this action.  She also complains about the negative references given to prospective employers FSH and GBMC using near identical language in both suits.[4]  The primary difference between this suit, as it is now framed, and the second suit is that, where the hostile and retaliatory actions are attributed in this suit to Plaintiff's opposition to Defendants' false billing practices, in the second suit, that same conduct is attributed to Dr. Kalloo's "preference for working with and providing advantages to young, Caucasian (and blond) or light skinned women."  Civ. No. WMN-13-3630, Compl. ¶ 5.[5]  The second suit makes no mention, whatsoever, of Defendants engaging in fraudulent billing practices, of Plaintiff

---

[4] In the second action, Plaintiff also includes additional allegations concerning negative references given to other hospitals to which she subsequently applied for employment. These allegations presumably post-date the filing of the original Complaint in this action.

[5] Plaintiff describes herself as an individual of "Indian ethnicity and Asian descent, with a darker skinned complexion." Id. ¶ 3.

complaining about those practices, or of any retaliation directed at her because of any opposition to billing practices.

After Defendants filed their Answer in this action, the Court issued a scheduling order on December 22, 2014.  The Defendants then filed a request, which Plaintiff's counsel indicated he did not oppose, to stay that order to permit the parties to confer as to how to most efficiently proceed in these two related actions.  The Court granted that request.  On January 21, 2015, counsel held a telephone conference and, apparently for the first time, Mr. Branch stated his intent to move to amend the complaint in this action to reinstate the previously dismissed substantive false claims act claims.  Plaintiff filed the pending motion for Leave to File a Second Amended Complaint including those claims on February 17, 2015.

Rule 15(a) of the Federal Rules of Civil Procedure states that, after a responsive pleading has been served, a complaint may not be amended without leave of the court.  The Rule provides that "leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962).  In Foman, the Supreme Court identified some of the reasons for denying a motion to amend.  Those reasons include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by

virtue of allowance of the amendment, futility of amendment, etc." 371 U.S. at 182. "Motions to amend are committed to the discretion of the trial court." <u>Keller v. Prince George's Cnty.</u>, 923 F.2d 30, 33 (4th Cir. 1991).

The Court will deny the motion to further amend the complaint on the grounds of both undue delay and undue prejudice. The proposed amendment would fundamentally change the nature and scope of this suit. Furthermore, amendment of this suit would significantly impact the timely resolution of Plaintiff's related action against Johns Hopkins.

The Court notes, initially, that Plaintiff seems to suggest that her change of counsel should have some impact on whether she should be permitted to further amend her complaint. She repeats in both her motion and her reply that is was her prior counsel that dismissed the false claim act claims. <u>See, e.g.</u>, ECF No. 60 at 1; ECF No. 64 at 9. Plaintiff, of course, is bound by the strategic choices of her counsel and the fact that she has now retained new counsel is of no significance. Even were the change of counsel to make a difference, the Court also notes that current counsel represented Plaintiff for more than ten months in this action before moving to amend the First Amended Complaint. He also asked for and was granted an extension of time so that he could adequately evaluate

Plaintiff's claims before serving Defendants with the First
Amended Complaint.

Were the Court to grant Plaintiff's motion, that would
inescapably lead to a second motion to dismiss and round of
briefing which would further delay the start of any discovery.
The fraudulent billing claims involve thousands of transactions,
some of which transpired more than seven years ago and, by the
time discovery would be completed, would be closer to nine years
distant.  While some of the delay can be attributed to the
Government, much rests on Plaintiff's choices, including her
choice to dismiss any fraudulent billing claims more than a year
ago.

The proposed amendment would also fundamentally change the
nature of Plaintiff's claims.  As it now stands, this case
involves claims that are personal to Plaintiff, claims related
to: how she was treated by her supervisors and co-workers,
particularly Dr. Kalloo; how that treatment impacted her
position at Johns Hopkins; and how her career, after leaving
Johns Hopkins, has been detrimentally affected.  The claims she
seeks to add are not her claims but the claims of the
Government, claims that the Government elected not to pursue.
Plaintiff also implies that the Government may have resolved, at
least partially, its claims against Johns Hopkins.  ECF No. 64
at 1 (stating that "Plaintiff has reason to believe that during

the course of the government's investigation, Defendant Johns Hopkins voluntarily submitted payments to the government for fraudulent billing").

The close relationship between this action as it is now framed and Plaintiff's Title VII claim is perhaps the most compelling reason to deny the motion for leave to amend.  In both actions, Plaintiff alleges that she was treated unfairly by Johns Hopkins personnel, particularly Dr. Kalloo; was retaliated against; was constructively discharged; and, was sabotaged in her efforts to find new employment.  In one case she alleges that these actions were taken because she protested fraudulent billing but makes no reference to any discriminatory motives. In the other, she alleges that she was discriminated against because of her skin color and ethnicity but makes no reference to any hostility engendered by her opposition to Johns Hopkins' billing practices.  While in a single action, a plaintiff can plead in the alternative, it would be highly prejudicial to Defendants to have to defend the same conduct in two separate actions under two separate theories.

With the denial of the motion for leave to amend, it would appear to the Court that these cases should be consolidated at least for discovery, if not for all further proceedings, including trial.  Both cases have now been referred to a Magistrate Judge for settlement and a settlement conference is

9

currently scheduled for April 29, 2015.  Should settlement efforts prove unsuccessful, the Court requests that the parties submit a joint status report within fourteen days after that conference proposing how they would like to proceed in these actions.[6]

Accordingly, IT IS this 14th day of April, 2015, by the United States District Court for the District of Maryland, ORDERED:

(1) That Plaintiff's Motion for Leave to File a Second Amended Complaint, ECF No. 60, is DENIED;

(2) That the Parties shall submit a joint status report within 14 days after the scheduled settlement conference should that conference prove unsuccessful; and

(3) That the Clerk of the Court shall transmit a copy of this Memorandum and Order to all counsel of record.


_____/s/_____
William M. Nickerson
Senior United States District Judge


---

[6] In her proposed Second Amended Complaint, Plaintiff omitted the paragraph designating Dr. Kalloo as a Defendant, see ECF No. 60-2, redlined version omitting ¶ 24, but still included Dr. Kalloo in the caption.  In the status report, Plaintiff should also indicate whether she intends to proceed against Dr. Kalloo in this action.